UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JIAN HUA LIN,

        Petitioner,

        v.                                                                CAUSE NO. 3:26cv58 DRL-SJF

BRIAN ENGLISH *et al.*,

        Respondents.

OPINION AND ORDER

Immigration detainee Jian Hua Lin, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Lin filed a reply. The petition is ready to be decided.

Mr. Lin is a Chinese citizen who entered the United States in 1984. In 2000, he was convicted of kidnapping in New York and sentenced to 25 years of incarceration [9-1]. On February 14, 2006, an immigration judge ordered him removed to China. On June 7, 2006, the Board of Immigration Appeals dismissed his appeal of the removal order. In 2020, while still incarcerated, Mr. Lin completed and submitted the paperwork for a travel document to the government. On February 7, 2024, Mr. Lin was released on parole.

A little more than a year later, United States Immigration and Customs Enforcement (ICE) placed him on a supervision order and asked him to obtain travel documents on his own. Mr. Lin reports making multiple attempts to obtain travel documents from China, but the Chinese Consulate consistently told him that China would not issue a travel document

without documentation to prove Chinese citizenship. On August 13, 2025, ICE detained Mr. Lin, and he is currently held at the Miami Correctional Facility.

About two months ago, the respondents filed a status report representing that the government has not obtained travel documents from China and that it was unlikely that Mr. Lin would be removed within the next 30 days. The respondents provided a declaration from an ICE official, attesting that travel documents had been requested from the Chinese government on October 15, 2025, but to date the request remained outstanding [9-2].

The respondents first argue that the court lacks subject matter jurisdiction over Mr. Lin's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Additionally, the court ordered Mr. Lin to show cause why the non-custodial respondents should not be dismissed from this case. In his reply, Mr. Lin says he does not contest the dismissal of the non-custodial defendants given their representations that they do not intend to remove him to a third country. Consequently, the court will dismiss the non-custodial defendants.

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period." *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant

status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Mr. Lin's removal period began to run after his release from incarceration in February 2024 and would have ended in May 2024, though it does not appear that the government detained Mr. Lin during the removal period. The respondents now rely on § 1231(a)(6) as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a

removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *Kem v. Noem*, No.

3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Lin has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondents identify China as the only country under consideration for removal. While incarcerated, Mr. Lin applied for travel documents, but China never granted his application. Following his release on parole, Mr. Lin tried to obtain travel documents on his own, but the Chinese Consulate told him that China would not issue travel documents to him without documentation of his Chinese citizenship. His most recent term of detention now spans eight months. The court finds that this preliminary showing suggests that China not just refused his repatriation in the past but will reasonably continue to refuse to accept Mr. Lin for removal in the foreseeable future.

To rebut this showing, the respondents offer an attestation that the government submitted a request for travel documents from China on October 15, 2025. This alone does not demonstrate that Mr. Lin's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Mr. Lin will be successful now in the backdrop of many unsuccessful efforts in the past. It also does not adequately explain why the government has not yet obtained travel documents from China six months after applying for them, or the time range it normally takes to secure travel papers. It does not provide any insight as to when China might reach a decision or the likelihood that China

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

will issue travel documents. It does not rest on the status of repatriation negotiations, or even indicate that there are any. Consequently, the court cannot find Mr. Lin's removal will occur within the reasonably foreseeable future. Therefore, the respondents must release Mr. Lin. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

In the petition, Mr. Lin also asks the court to enter an order prohibiting the respondents from detaining him again until the respondents have secured travel documents from China and prohibiting them from removing him to a third country without thirty days' advance notice. Habeas allows for equitable remedies and allows courts "to fashion appropriate relief other than immediate release." *Peyton v. Rowe*, 391 U.S. 54, 66 (1968). But the custody requirement is absolute, *see Maleng v. Cook*, 490 U.S. 488, 492 (1989) ("While we have very liberally construed the "in custody" requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."), even if that custody is in the future, *see Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[T]he writ is available as well to attack future confinement and obtain future releases."). The court will not prejudge future circumstances, and mere fear of future redetention is not enough to trigger a prospective prohibition. Therefore, the court declines to issue this form of habeas relief.

For these reasons, the court:

(1) DISMISSES the Attorney General of the United States, the Secretary of Homeland Security, the Acting Director of the United States Immigration and Customs Enforcement, and the Acting Executive Associate Director of Enforcement and Removal Operations;

(2) PARTIALLY GRANTS the petition for writ of habeas corpus (ECF 1) and ORDERS the respondent to release Jian Hua Lin on the same conditions of supervised release that existed before his latest detention and to certify compliance with this order by filing a notice with the court by **April 16, 2026**;

(3) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(4) ORDERS that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

April 14, 2026                                      _s/ Damon R. Leichty_
                                                   Judge, United States District Court